CARPENTER v CONSUMERS POWER COMPANY

CASE v CONSUMERS POWER COMPANY

Docket Nos. 191299, 191733, 196797. Submitted December 10, 1997, at Grand Rapids. Decided July 7, 1998, at 9:00 A.M. Leave to appeal sought.

Larry and Vanessa Carpenter brought a negligence action in the Barry Circuit Court against Consumers Power Company, alleging that stray voltage from the defendant's electrical service to the plaintiffs' dairy farm adversely affected their herd's milk production and seeking damages for lost milk production.

Kenneth and Diana Case, dairy farmers like the Carpenters, brought a similar action against Consumers Power in the same court.

The actions were consolidated for trial, and a jury returned verdicts and awards of damages for the plaintiffs. The court, Patrick H. McCauley, J., granted the defendant judgment notwithstanding the verdict with respect to the Carpenters, ruling that the addition of water to milk sold from the Carpenters' farm after the defendant corrected the stray voltage problem was an attempt to inflate damages and constituted wrongful conduct that served to bar the Carpenters' claim. The defendant's motion for an award of actual costs and attorney fees against the Carpenters was denied by the court. With respect to the Cases, the court granted a motion by the defendant for remittitur based on speculative expert testimony concerning the Cases' damages.

The Carpenters appealed from the order granting the defendant judgment notwithstanding the verdict, and the defendant cross appealed the denial of its motion for attorney fees (Docket No. 191299). In a second appeal, the defendant appealed from the judgment entered in favor of the Cases, and the Cases cross appealed the grant of remittitur (Docket No. 191733). In a third appeal, the defendant appealed by leave granted from an award in its favor of statutory costs but a denial of its request for actual attorney fees and costs (Docket No. 196797). The appeals were consolidated.

The Court of Appeals held:

1. The trial court correctly granted the defendant judgment notwithstanding the verdict with respect to the Carpenters. Brad Carpenter, son and employee of Larry Carpenter, had pleaded nolo

contendere to a charge of possession of adulterated milk. The evidence at trial supported a reasonable inference that Larry and Vanessa Carpenter were aware of the addition of water to milk produced at their farm. There was a sufficient causal nexus between the illegal conduct and the Carpenters' asserted damages.

2. The trial court correctly refused to award attorney fees for the defendant and against the Carpenters on the claimed basis that the Carpenters' action was frivolous. Although the Carpenters may have committed fraud on the court with regard to their alleged damages, their claim was not frivolous. They had a reasonable basis upon which to believe that the underlying facts of stray voltage and its adverse effects on their herd were true, and their position was not devoid of arguable legal merit.

3. The trial court did not abuse its discretion in not exercising its inherent authority under the fraud-on-the-court doctrine to award actual costs to the defendant and against the Carpenters. The trial court correctly concluded that dismissal of the Carpenters' action was an adequate sanction for their misconduct.

4. The trial court correctly instructed the jury with respect to the defendant's duty of care by telling the jury, consistent with *Schultz v Consumers Power Co*, 443 Mich 445 (1993), that the defendant had a duty to reasonably inspect and repair wires and other instrumentalities in order to discover and remedy hazards and defects.

5. The trial court correctly denied the defendant's motion for judgment notwithstanding the verdict with respect to the Cases. There was sufficient evidence of a duty owed by the defendant to the Cases, a breach of that duty, and resultant injury to the Cases.

6. The trial court did not abuse its discretion in permitting an agricultural economist to testify as an expert for the plaintiffs. The witness was qualified by education and had testified as an expert on stray voltage on other occasions.

7. The trial court did not abuse its discretion in granting remittitur. The court correctly determined as not credible the expert witness' testimony that the normal output of the Case farm was thirty-five percent above average. The trial court did not err in reducing the damage award by thirty-five percent.

Affirmed.

CORRIGAN, C.J., concurring, wrote separately to urge the Supreme Court to consider whether the general standard of care imposed by *Schultz, supra*, on electric utilities properly applies to cases of stray voltage affecting dairy herds in light of the absence from those cases of a threat to humans of death or serious injury.

1. MOTIONS AND ORDERS — JUDGMENT NOTWITHSTANDING THE VERDICT — APPEAL.

A trial court, when deciding a motion for judgment notwithstanding the verdict, must examine the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the plaintiff; if the evidence is such that reasonable jurors could have found for the plaintiff, neither the trial court nor the Court of Appeals may substitute its judgment for that of the jury.

2. JUDGMENTS — RELIEF FROM JUDGMENTS — FRAUD, MISREPRESENTATION, OR MISCONDUCT.

A trial court may relieve a party from a final judgment, order, or proceeding on the grounds of fraud, misrepresentation, or other misconduct of the opposing party; wrongful conduct by a plaintiff must be prohibited or almost entirely prohibited under a penal or criminal statute in order to serve as a basis for barring the claim; there also must be a sufficient causal nexus between the plaintiff's illegal conduct and the plaintiff's asserted damages (MCR 2.612[C][1][c]).

3. COSTS — FRIVOLOUS ACTIONS — APPEAL.

A court that finds on motion of any party that an action was frivolous shall award the prevailing party costs and fees, including reasonable attorney fees; a claim is frivolous when the party's primary purpose was to harass, embarrass, or injure the prevailing party, the party had no reasonable basis upon which to believe the underlying facts were true, or the party's position was devoid of arguable legal merit; a trial court's finding that a claim is frivolous will not be reversed on appeal unless it is clearly erroneous (MCL 600.2591; MSA 27A.2591).

4. COSTS — FRAUD ON THE COURT.

A trial court, under the fraud-on-the-court doctrine, has discretionary authority to award actual costs to a party on the basis of the opposing party's misconduct.

5. NEGLIGENCE — ELECTRIC UTILITIES — DUTY TO INSPECT AND REPAIR.

An electric utility must exercise reasonable care to reduce potential hazards as far as practicable, including reasonably inspecting and repairing wires and other instrumentalities to discover and remedy hazards and defects.

6. WITNESSES — EXPERT WITNESSES.

A person may be qualified to testify as an expert by virtue of knowledge, skill, experience, training, or education in the subject matter of the testimony; where such testimony is speculative, it should be excluded or stricken; a trial court's decision to admit expert testi-

mony or to exclude it as speculative is reviewed on appeal for abuse of discretion (MRE 403, 702).

*Martin W. Hable*, for the plaintiffs.

*Warner Norcross & Judd LLP* (by *Roger M. Clark*), for the defendant.

Before: CORRIGAN, C.J., and DOCTOROFF and FITZGERALD, JJ.

DOCTOROFF, J. In Docket No. 191299, plaintiffs Larry and Vanessa Carpenter appeal as of right the circuit court's order granting defendant's motion for judgment notwithstanding the verdict (JNOV) and costs. Defendant cross appeals the circuit court's denial of its motion for attorney fees. In Docket No. 191733, defendant appeals the judgment entered in favor of plaintiffs Kenneth and Diana Case following a jury trial, and plaintiffs Case cross appeal the circuit court's order granting remittitur. In Docket No. 196797, defendant appeals by leave granted the postjudgment order awarding defendant statutory costs in the amount of $7,127.17, but denying defendant's request for an award of actual costs and attorney fees. We affirm.

These two cases, which were consolidated for trial, arose out of damages to plaintiffs' dairy farm operations allegedly caused by neutral to earth voltage, or NEV, from defendant's primary neutral conductor. The electrical wiring on a farm has a conductor, known as the neutral conductor, which is grounded to the earth. According to an informational pamphlet produced by defendant and the Agricultural Engineering Department at Michigan State University, NEV is any measurable level of voltage that may occur between a

metal object and the adjacent floor or earth. When NEV is found at a level that is considered to have a potential effect on animals, it is known as "stray voltage." Stray voltage on a dairy farm may cause electrical current to flow through a cow and cause it discomfort. Cows who are affected by stray voltage may become uneasy, dance from foot to foot, and will lap at their water tank like a dog instead of taking long, deep drinks. They may be reluctant to enter a building where stray voltage is present. During milking, they may kick the milking equipment and people. They will produce less milk, and will produce milk unevenly, which will leave milk in the udders, causing mastitis. Stray voltage may be corrected by separating the neutrals of the electrical system.

In 1982, milk production on the Case farm began to decrease. Plaintiff Kenneth Case installed a new milking system, but the production decreased even further. The cows were restless. They were reluctant to enter the milking parlor and would kick off the milking equipment and kick the people milking them. In 1986, Case sold his dairy herd, and in 1989 he began raising pigs and beef cattle. In 1992, a friend told Case about stray voltage, and Case realized that his cows had displayed the symptoms that his friend described. In July 1993, Case bought a small herd of twenty-four jerseys. In September 1993, defendant split the neutrals, or "isolated" the Case farm. The cows' behavior returned to normal.

The Carpenters' farm began to experience a decline in milk production in 1985. The Carpenters also noticed that the cows became agitated, were reluctant to enter the milking parlor, and would kick off the milking equipment. After plaintiff Larry Carpenter

heard of stray voltage, he contacted defendant. Defendant split the neutrals on the Carpenter farm, and the cows' behavior gradually returned to normal and production increased.

In Docket No. 191299, plaintiffs Carpenter first argue that the trial court committed error requiring reversal when it granted defendant's motion for JNOV after finding that their son, Brad Carpenter, had committed fraud on the court. Plaintiffs argue that the trial court erred in finding that Brad Carpenter's plea of nolo contendere to a charge of possession of adulterated milk constituted an admission of guilt to adding water to the milk sold from the Carpenter farm. Plaintiffs argue that Brad Carpenter is not a party to this action and that no evidence implicates plaintiffs in his wrongful conduct. Plaintiffs further argue that Brad Carpenter's alleged wrongful act had no causal connection to the stray voltage damages they suffered. We disagree.

Brad Carpenter worked as a milk hauler for the Carpenter farm and for other farms in the area. He was employed by plaintiff Larry Carpenter, who owned the truck and held the license to haul milk. During trial, defendant informed the court that there was evidence that water had been added to the bulk tank of the Carpenters' milk truck. On April 18, 1995, an employee of the Michigan Department of Agriculture tested a sample from the Carpenter truck. The test indicated that there were 2,190 pounds of water in the bulk tank when the truck started out that morning. Samples from the farm's bulk tank before the milk was transferred to the truck showed no water. Each of the other farmers who added milk to the truck also had a sample taken from their own

tanks before the milk was transferred to the bulk tank. Samples from five different days in April indicated that the bulk truck contained water that was in the Carpenter component of the load. Defendant also presented evidence of a report from the Dairy Herd Improvement Association (DHIA)[1] for January 11, 1994, that indicated that the Carpenter farm had produced 3,516 pounds of milk. However, the documentation indicated that the Carpenters sold 5,195 pounds of milk on January 12. On August 23, 1995, Brad Carpenter pleaded nolo contendere to a charge of possession of adulterated milk.

When deciding a motion for JNOV, a trial court must examine the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the nonmoving party. If the evidence is such that reasonable jurors could have found for the plaintiff, neither the trial court nor this Court may substitute its judgment for that of the jury. *McLemore v Detroit Receiving Hosp*, 196 Mich App 391, 395; 493 NW2d 441 (1992). A trial court may relieve a party from a final judgment, order, or proceeding on the grounds of fraud, misrepresentation, or other misconduct of the opposing party. MCR 2.612(C)(1)(c); *Kiefer v Kiefer*, 212 Mich App 176, 179; 536 NW2d 873 (1995).

When a plaintiff's action is based in whole or in part on his own illegal conduct, his claim is barred. *Orzel v Scott Drug Co*, 449 Mich 550, 558; 537 NW2d 208 (1995). The rationale behind the "wrongful-conduct rule" is that the courts should not lend their

---

[1] The DHIA provides dairy farmers with management information such as production per cow, herd production, somatic cell counts, and reproductive status.

aid to a plaintiff who founded his cause of action on his own illegal conduct. *Id.* at 559. In order to implicate the wrongful-conduct rule, the plaintiff's conduct must be prohibited or almost entirely prohibited under a penal or criminal statute. Where the plaintiff's illegal act amounts only to a violation of a safety statute, such as traffic laws or laws regulating workplace safety, the plaintiff's act "does not rise to the level of serious misconduct sufficient to bar a cause of action by application of the wrongful-conduct rule." *Id.* at 561. For the wrongful-conduct rule to apply, there must be a sufficient causal nexus between the plaintiff's illegal conduct and the plaintiff's asserted damages. *Id.* at 564.

The trial court did not abuse its discretion in granting JNOV to defendant. The trial court determined that the only reasonable inference from the evidence was that plaintiffs were aware that water had been added to their milk and, in fact, participated in the illegal act of adding water to their milk for the purposes of increasing their milk production in order to raise the level of their damages. Approximately 2,000 pounds of added water were found in the milk on each of the days that the milk was tested. The fact that the figures on Brad Carpenter's documentation agreed with the weight of the milk, which contained the added water, supports a finding that Brad Carpenter knew that water had been added to the milk, and that it must have been added by someone at the Carpenter farm. Brad Carpenter was an employee and agent of his father, plaintiff Larry Carpenter. Plaintiffs knew how much milk their cows were producing and how much money they were paid for the milk. Evidence indicated that the Carpenter farm was selling more

milk than it produced. The only reasonable inference
from this evidence is that plaintiffs were aware that
water was being added to their milk, and that they in
fact deliberately added the water in order to inflate
their milk sales. Furthermore, this wrongful conduct
was causally related to plaintiffs' cause of action, in
that it supported plaintiffs' contention that the stray
voltage on their property had resulted in decreased
milk production by creating the impression that, after
the stray voltage had been corrected, plaintiffs' milk
production increased.

Plaintiffs' claim that Brad Carpenter's nolo con-
tendere plea was improperly admitted is also without
merit. Plaintiffs rely on *Lichon v American Universal
Ins Co*, 435 Mich 408; 459 NW2d 288 (1990), for the
proposition that, under MRE 410, a plea of nolo con-
tendere is inadmissible against the party in subse-
quent litigation. However, MRE 410 was amended in
1991 to provide that evidence of a nolo contendere
plea is admissible for the same purposes as evidence
of a guilty plea. Furthermore, MRE 410 only applies
to bar the admission of a plea of nolo contendere in a
proceeding *against the defendant who made the plea.*
Brad Carpenter is not a party to this action, and
therefore, MRE 410 does not apply to bar evidence of
his plea.

On appeal in Docket No. 196797 and on cross
appeal in Docket No. 191299, defendant argues that
the trial court abused its discretion in refusing to
award attorney fees after finding that plaintiffs had
committed fraud on the court. We disagree.

MCL 600.2591; MSA 27A.2591 provides that, on
motion of any party, if a court finds that an action
was frivolous, the court shall award the prevailing

party costs and fees, including reasonable attorney
fees. A claim is frivolous when (1) the party's primary
purpose was to harass, embarrass, or injure the pre-
vailing party, or (2) the party had no reasonable basis
upon which to believe the underlying facts were true,
or (3) the party's position was devoid of arguable
legal merit. MCL 600.2591(3)(a); MSA 27A.2591(3)(a);
*Cvengros v Farm Bureau Ins*, 216 Mich App 261, 267;
548 NW2d 698 (1996). A trial court's finding that a
claim is frivolous will not be reversed on appeal
unless it is clearly erroneous. *Id.* at 266. If the court
finds the plaintiff's claim to be frivolous, sanctions
are mandatory, and the trial court does not have dis-
cretion to forgo sanctions. *Id.* at 268.

Defendant argues that plaintiffs' suit was frivolous
because the underlying facts upon which it was based
were proved to be false. Defendant bases its argu-
ment on the trial court's finding that plaintiffs had
committed fraud on the court by watering their milk
tanks in an effort to increase their damages. We disa-
gree. There was evidence that stray voltage was pres-
ent on the Carpenter farm and that the cows dis-
played symptoms that are known to be the result of
stray voltage. Plaintiffs had a reasonable basis upon
which to believe that the underlying facts were true,
and their position was not devoid of arguable legal
merit. Although plaintiffs committed fraud on the
court with regard to the amount of their damages, we
cannot say that the trial court's finding that the claim
was not frivolous was clearly erroneous. Therefore,
sanctions were not mandatory.

Defendant further argues that the trial court should
have exercised its inherent authority to award actual
costs under the fraud-on-the-court doctrine. A trial

court has inherent authority to impose sanctions on the basis of party misconduct. *Cummings v Wayne Co*, 210 Mich App 249, 251-252; 533 NW2d 13 (1995). Whether or not to impose sanctions is within the trial court's discretion. *Richardson v Ryder Truck Rental, Inc*, 213 Mich App 447, 450; 540 NW2d 696 (1995). Under an abuse of discretion standard, considerable deference is given to the trial court. *Fletcher v Fletcher*, 200 Mich App 505, 512; 504 NW2d 684 (1993), modified 447 Mich 871 (1994). In the present case, as in *Cummings*, the trial court found that the dismissal with prejudice of plaintiffs' action was an adequate sanction. We find that this was not an abuse of discretion. To say otherwise would be to require a lower court to award attorney fees in cases that involve party misconduct other than the filing of a frivolous lawsuit, which is not the law.

In Docket No. 191733, defendant argues that the trial court committed error requiring reversal in instructing the jury regarding the duty of care owed by an electric company. The determination whether a jury instruction is applicable and accurately states the law is within the discretion of the trial court. *Szymanski v Brown*, 221 Mich App 423, 430; 562 NW2d 212 (1997). Reversal is not required if, on balance, the theories and the applicable law were adequately and fairly presented to the jury. *Id.* This court will not reverse as a result of an erroneous jury charge unless the failure to do so would be inconsistent with substantial justice. *Id.* The question whether a duty exists is a question of law for the court to decide. *Murdock v Higgins*, 454 Mich 46, 53; 559 NW2d 639 (1997). In determining whether a duty exists, a court must evaluate factors such as the relationship of the parties,

the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented. *Id.*

The trial court instructed the jury as follows:

> It is well settled that electrical energy possesses inherently dangerous properties requiring expertise in dealing with its phenomena. Therefore Consumers Power Company has a duty to reasonably inspect and repair wires and other instrumentalities in order to discover and remedy hazards and defects. Consumers Power Company, being engaged in the transmission of electricity, is bound to anticipate ordinary use of the area surrounding the lines and to appropriately safeguard an attendant risk. The test to determine whether a duty was owed is not whether Consumers Power Company should have anticipated a particular act from which the injury resulted, but whether it should have foreseen the probability that injury might result from any reasonable activity done on the premises for business, work or pleasure.

This instruction was based on *Schultz v Consumers Power Co*, 443 Mich 445; 506 NW2d 175 (1993). In *Schultz*, the plaintiff's decedent was electrocuted when he came into contact with an aluminum ladder that was near an uninsulated power line. The instant case involves property damage as a result of low-level stray voltage. Defendant argues that the standard announced in *Schultz* imposes a heightened duty of care that approaches strict liability and is inapplicable to the present case.

Regarding the standard of care owed by an electrical utility, our Supreme Court has stated:

> [C]ompelling reasons mandate that a company that maintains and employs energized power lines must exercise reasonable care to reduce potential hazards as far as practicable. First, electrical energy possesses inherently dangerous properties. Second, electrical utility companies possess

expertise in dealing with electrical phenomena and delivering electricity. Lastly, although a reasonable person can be charged with the knowledge of certain fundamental facts and laws of nature that are part of the universal human experience, such as the dangerous properties of electricity, it is well settled that electricity possesses inherently dangerous properties requiring expertise in dealing with its phenomena. Therefore, pursuant to its duty, a power company has an obligation to reasonably inspect and repair wires and other instrumentalities in order to discover and remedy hazards and defects. [*Schultz, supra* at 451 (citations omitted).]

Defendant argues that an instruction referring to the "inherently dangerous properties" of electricity is inapplicable to a case involving stray voltage, stating that "electricity itself is not inherently dangerous: the same physical phenomenon that powers an electric chair gently warms an electric blanket." We disagree with defendant's contention that electricity itself is not dangerous. Although the risks posed by live power lines differ from the risks posed by stray voltage, electricity nevertheless does require expertise in dealing with its phenomena. If the damage is reasonably foreseeable, then a duty is owed. *Schultz, supra* at 451-452. Therefore, in the context of stray voltage, we hold that an electrical utility has a duty to reasonably inspect and repair wires and other instrumentalities in order to discover and remedy hazards and defects. Because the instruction given adequately and fairly presented this standard, reversal is not required. *Szymanski, supra* at 430.

Defendant next argues that the trial court erred in denying its motion for JNOV because plaintiffs failed to prove that defendant acted negligently. Defendant contends that plaintiffs merely demonstrated that

stray voltage was present, but did not demonstrate any act or omission on the part of defendant that caused harm to plaintiffs. We disagree.

To establish a prima facie case of negligence, a plaintiff must demonstrate that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, (3) the defendant's breach of its duty was the proximate cause of the plaintiff's injuries, and (4) the plaintiff suffered damages. *Richardson v Michigan Humane Society*, 221 Mich App 526, 528; 561 NW2d 873 (1997).

As discussed above, an electric utility has a duty to reasonably inspect and repair wires and other instrumentalities in order to discover and remedy hazards and defects. In the present case, the evidence indicated that defendant knew as early as the 1970s that stray voltage could have a negative effect on dairy farms. It knew in 1983 that isolation of the neutral would solve the stray voltage problem. Yet, until late 1994, defendant had a policy of waiting for a customer to complain before it would test for and correct stray voltage. Defendant did not correct the stray voltage on the Case farm until 1993, after Kenneth Case notified it of a potential problem. Therefore, there was sufficient evidence to support a finding that defendant breached its duty.

There was also sufficient evidence to support a finding that defendant's breach of its duty was the proximate cause of plaintiffs' injuries. Expert witnesses, as well as defendant's own pamphlet concerning the effects of stray voltage on dairy farms, discussed the symptoms caused by the effects of stray voltage in cows. The cows on both the Carpenter and Case farms displayed these symptoms. Furthermore,

there was evidence that plaintiffs' milk production decreased in the years before the correction of the voltage problem. Therefore, the trial court did not err in denying defendant's motion for JNOV.

Defendant next argues that the trial court erred in permitting plaintiffs' expert Michael Behr to testify with regard to damages because his testimony was based on pure speculation. We disagree.

A person may be qualified to testify as an expert witness by virtue of his knowledge, skill, experience, training, or education in the subject matter of the testimony. MRE 702; *Phillips v Deihm*, 213 Mich App 389, 401; 541 NW2d 566 (1995). Where such testimony is purely speculative, it should be excluded or stricken pursuant to MRE 403. *Id.* at 402. A trial court's decision to admit expert testimony or to exclude it as speculative is reviewed on appeal for an abuse of discretion. *Id.* at 401.

After reviewing the record, we conclude that Behr was qualified as an expert. He holds a doctorate degree in agricultural economics from the University of Wisconsin. He has testified as an expert in the area of stray voltage damages on many occasions. He explained his methods of evaluation and the data he used for his conclusions. Defendant conducted a thorough cross-examination. The weight and credibility of Behr's testimony was for the jury to determine. *Id.* Therefore, the trial court did not abuse its discretion in permitting Behr to testify.

Defendant also argues that the trial court erred in calculating the amount of damages on remittitur. However, this issue is not properly preserved. After the trial court made its calculations, it invited the parties to check its figures. All parties checked the calcu-

lations and determined that the trial court's figures were correct. Defendant did not object to the trial court's calculations at that time or present its own method of calculation. Therefore, we decline to address this issue.

Finally, plaintiffs Carpenter and Case both argue that the trial court erred in granting remittitur. Because we affirm the circuit court's order granting JNOV in favor of defendant against plaintiffs Carpenter, we will address this issue only as it pertains to the Case action.

MCR 2.611(E)(1) provides:

> If the court finds that the only error in the trial is the inadequacy or excessiveness of the verdict, it may deny a motion for a new trial on condition that within 14 days the nonmoving party consent in writing to the entry of judgment in an amount found by the court to be the lowest (if the verdict was inadequate) or highest (if the verdict was excessive) amount the evidence will support.

When presented with a motion for remittitur, the trial court must determine whether the jury's award is supported by the evidence. *Szymanski, supra* at 431. This Court reviews a trial court's ruling on a motion for remittitur for an abuse of discretion. *Id.* An abuse of discretion exists where an unprejudiced person, considering the facts on which the trial court made its decision, would conclude that there is no justification for the ruling made. *Id.*

In the Case action, the jury found that defendant was negligent, defendant's negligence was the proximate cause of plaintiffs' injury, and that the total amount of damages to plaintiffs was $4,335,620. The jury found that plaintiffs' own negligence contributed to their injury in the amount of fifty-five percent, and

the court reduced the verdict to $1,951,029. Defendant moved for remittitur, arguing that plaintiffs' proofs concerning damages were merely speculative, and that Behr's testimony was based on insufficient investigation, speculation, assumptions, and unreliable anchor points for his calculations. The trial court reviewed the evidence presented by Dr. Behr and determined that there was no support for his finding that the normal output of the Case farm was thirty-five percent above average. The court reduced the damages by thirty-five percent, from $4,335,620 to $2,818,153. The court then reduced this amount by fifty-five percent, to $1,268,168 on the basis of the jury's finding of comparative negligence.

The trial court did not abuse its discretion in granting defendant's motions for remittitur. Behr based his calculations on the years before the stray voltage, because that produced the best results. He testified that his calculations were based on information that Case gave him over the telephone. He could not identify the source of his information. We find that Behr's testimony was not credible. He did not objectively verify any information provided to him by plaintiffs, and he discounted or disregarded information that did not conform to his hypothesis. Consequently, there was no evidence to support a conclusion that the Case farm would have produced above the state average absent the stray voltage. Therefore, remittitur was appropriate.

Affirmed.

FITZGERALD, J., concurred.

CORRIGAN, C.J. (*concurring*). I join the majority's opinion regarding Docket Nos. 191299 and 196797

without reservation. I concur in its decision in Docket No. 191733, but write separately to urge our Supreme Court to consider the applicability of *Schultz v Consumers Power Co*, 443 Mich 445; 506 NW2d 175 (1993), to cases involving prolonged exposure to low levels of stray voltage that cause avoidance behavior in dairy herds.

I agree that the trial court did not err in crafting jury instructions in reliance on *Schultz*. However, I join the trial court in questioning whether *Schultz'* broad statement of the duty of care, which approaches strict liability, is appropriate where the electric current involved is not powerful and human beings face no threat of death or serious bodily harm. *Schultz, supra* at 451, appears to require an electric company employing energized power lines to inspect and repair those lines to reduce "potential" hazards "as far as practicable"; mere remedying of defective conditions after notice is not adequate. *Id.* at 454. Applying *Schultz'* broad formulation renders a defendant utility company negligent for failing to inspect, even where the hazard is minimal. Because the risk to be foreseen from low levels of electric current is not of the highest order, the duty should not approach strict liability. I adopt the trial court's statement regarding the problem:

> I can't conclude that the jury made a mistake, unless—unless they were improperly instructed as to the duty owed · by Consumer Powers (sic) as set forth in the *Schultz* case that we discussed throughout this case.
>
> . Now, the Court considered this instruction and, though having some reservations about it when I applied it in the actual trial as it applied to stray voltage—if you recall, I was concerned as a judge—I didn't quite understand the Supreme Court's rationale in that case in finding the duty

that they set forth. It seemed to me it was almost a[n] absolute liability. And I so said then and I still repeat it now, that it seems to me that this is too strong a duty to be imposed upon stray voltage cases. But I did say that I didn't know of any other duty, I couldn't find any other duty, and, under the rule of starre (sic) decisis and, of course, the Supreme Court ruling, I was bound by the ruling and the duty set forth in that case. And that's what I did. I applied that to my review of the proposed instructions and I instructed the jury based upon this.

\*    \*    \*

[T]hough I was concerned about the ruling under the *Schultz* case and I personally as a judge believed as the trier of this case that a less stringent rule should apply in the stray voltage cases, but I believed it was my duty and I was bound to follow the rule set forth by the Supreme Court, that I was not in a position to overrule and/or distinguish the *Schultz* case.

\*    \*    \*

It's my opinion—and I expressed my personal opinion and I don't have any reason to change anything—but I think I agree with the—Mr. Clark that in the *Schultz* case you're talking about the hazardous portion of the electrical current systems that Consumer Powers (sic) is selling to the customers. And there's no question that it is hazardous and there's no question that if you hit the high line and you get ahold of the hot line, you're gonna get electrocuted and you can be killed [sic], and it also could cause fires and damage property. We all know that there are these cases where people have been electrocuted. The *Schultz* case, *Detroit Edison* case, many other cases. We also know that many houses have burned down because of the hot wire shortages in the houses. And that is true.

But as I understand all the testimony in this case and all of the experts, that the stray voltage is not hazardous. The only way that stray voltage could be hazardous on the neutral [line] that I can see in all the testimony I've reviewed is it would have to be the hot line falling onto or connecting

to the neutral line and in effect changing the neutral to a
hot line in order to be hazardous and dangerous. That's why
I think and I put this in the record—though I can't make
this decision that I put it on the record hoping the appeals
court will review it in light of the fact that I do not believe
stray voltage is hazardous such as to put the almost too
strict of a duty upon Consumers Powers (sic) or any power
company as to stray voltage.

In my view, *Schultz'* articulation of a broad duty is
not appropriate for all claims involving the delivery of
electricity. The scope of the duty should vary with the
nature of the risk.

Nonetheless, because I do not find error in the trial
court's instruction under *Schultz*, I join the majority's
result.