Michael **NESHEWAT,** Plaintiff–
Appellant,

v.

Maurice J. **SALEM,** Defendant–
Appellee.

No. 97–2312.

United States Court of Appeals,
Sixth Circuit.

Submitted Jan. 29, 1999.

Decided March 31, 1999.

Robert E. Forrest (briefed), Christopher J. Falkowski, Raymond & Prokop, Southfield, MI, for Plaintiff–Appellant.

Maurice J. Salem (briefed), Wappingers Falls, NY, pro se.

Before: KENNEDY, DAUGHTREY, and CLAY, Circuit Judges.

## OPINION

KENNEDY, Circuit Judge.

Plaintiff Michael J. Neshewat appeals the district court's dismissal of his diversity tort suit under principles of collateral estoppel. The plaintiff challenges the district court's holding that his participation in a pretrial diversion program precluded him from pursuing a claim of injurious

falsehood against defendant Maurice Salem predicated upon the defendant's statements to police and at a preliminary examination. For the reasons set forth in this opinion, we **AFFIRM** the district court's dismissal of plaintiff's suit, but on different grounds. We do not reach whether plaintiff's injurious falsehood suit is barred by collateral estoppel, as his complaint fails to state a cognizable claim under Michigan law, and as the injurious statements upon which his suit is based are privileged.

## I. FACTS

Plaintiff Michael J. Neshewat ("Plaintiff" or "Michael") and defendant Maurice Salem ("Maurice" or "Defendant," also known as Maurice Neshewat) are brothers. The instant action arises from a bitter family feud between Maurice, Michael, and their six siblings concerning the dissipation of assets of their mentally and physically infirm mother, Leha Neshewat ("Mrs. Neshewat"). In July 1989, their brother Nader Neshewat petitioned the Supreme Court of Dutchess County, New York to appoint a conservator for Mrs. Neshewat. Michael, Maurice, and their siblings were named as respondents.[1] During the course of the conservatorship action, Michael and Maurice were ordered to file accountings and explain their holdings and the disposition of their mother's assets, and all proceeds therefrom.

Mrs. Neshewat's holdings included a six-family residential unit in Yonkers, New York, which was held as a rental property. Apparently Michael and Maurice had their mother convey the property to them while she was incompetent sometime before the conservatorship proceedings were instituted. The sons took the rental income from the property, and then sold the house in exchange for $138,935.21 in cash and a $50,000 purchase money mortgage from

the purchaser for the balance. They deposited the cash into a money market account and eventually withdrew most of the money.

In his accounting filed in the conservatorship proceeding, Michael stated that Maurice used $38,500 from the sale of the rental property to buy a 1989 Mercedes Benz. Maurice conceded this fact in his own accounting and in testimony. On December 13, 1989, the judge presiding over the conservatorship proceeding appointed an independent conservator for Mrs. Neshewat's property, and ordered Maurice to repay the conservatorship estate $107,042, which included the $38,500 used to purchase the Mercedes Benz. According to the record evidence, Maurice had purchased the Mercedes in February 1989 for $39,000. He initially paid a $500 deposit, and upon delivery of the vehicle, paid the balance of $38,500. Maurice was issued a New York certificate of title on April 30, 1989. The brothers offer divergent accounts of what happened to the Mercedes Benz between April 1989 and October 1993.

On May 17, 1989, not quite one month after receiving his certificate of title, Maurice reported to police in New York that his brother, Michael, had stolen the title to the Mercedes, forged Maurice's signature, and had the title transferred to himself.[2] While he claims Michael absconded with the title to his car, Maurice insists that the car itself remained at all times in his possession in New York.

Michael contends, however, that when Maurice first considered purchasing the Mercedes, he asked Michael for a loan of $38,000, and promised to repay him when several certificates of deposit matured. According to Michael, when Maurice failed to repay the loan, he voluntarily turned

---

1. Dutchess County, New York Supreme Court Judge Anthony J. Cerrato, who presided over the conservatorship action, stated that the dispute between the Neshewat children was "one of the most bitter feuds that this Court has seen in his twenty years on the bench."

2. Maurice later brought a multi-count civil suit against Michael and his other siblings which included a claim concerning the alleged forgery of the Mercedes title certificate.

over title to the car to Michael. In approximately September 1989, Michael moved from New York to Grosse Isle, Michigan, leaving the car and one set of keys with Maurice in New York, and giving him another opportunity to repay the loan. Michael claims he eventually concluded that Maurice would never pay him back, and therefore insured the car in Michigan with Meridian Mutual Insurance Company ("Meridian Mutual") and retitled the car in Michigan. At some unspecified point in time, he claims to have moved the Mercedes itself from New York to Michigan. On July 21, 1990, approximately two months after Michael insured the Mercedes with Meridian Mutual, Michael reported it stolen from a parking lot in Trenton, Michigan. He submitted a theft claim to Meridian Mutual, which paid him $37,132 for his loss on October 15, 1990.

Meanwhile, in New York, Maurice continued his efforts to reestablish his rightful ownership of the Mercedes. In September 1992, Maurice tried to secure another copy of his original title from the New York Department of Motor Vehicles, which conducted a hearing on the matter on November 30, 1992. Michael allegedly was notified to appear to testify, but he failed to appear or respond. In its December 21, 1992 opinion and order, the Administrative Law Judge found that Maurice's signature transferring title to the Mercedes had been forged and he declared Michael's New York title to the vehicle void.

Almost a year later, on October 15, 1993, Maurice's wife was involved in a traffic accident while driving the Mercedes in New York. The police officer who arrived at the accident scene reported the vehicles that were involved, and discovered that the Mercedes had been reported stolen in Michigan. The officer notified Meridian Mutual, which had been issued a title to the car by the Michigan Secretary of State upon payment of Michael Neshewat's theft claim. Meridian Mutual instituted an action in Dutchess County, New York to preclude both brothers from taking possession of the car and to have Meridian Mutual declared its rightful legal owner. In support of its petition for a temporary restraining order, Meridian Mutual filed affidavits which indicated that the company suspected one or both of the brothers of committing insurance fraud.

On February 16, 1995, the Trenton, Michigan police arrested Michael Neshewat and charged him with intent to pass false title, in violation of Mich. Comp. Laws § 257.254, and false pretenses with intent to defraud over $100, in violation of Mich. Comp. Laws § 750.218, both felonies under Michigan law punishable by up to 10 years of imprisonment or a $5,000 fine, or both. Maurice told the officer in charge of the case that the Mercedes was in his possession in New York at the time Michael reported it stolen in Michigan, and then testified to that effect at the Michigan preliminary examination. Maurice also testified that he never gave Michael permission to take the car to Michigan, nor to retitle the car in his name.

In August 1995, Michael Neshewat agreed to pretrial diversion on both charges. The diversion agreement required Michael to pay $40,000 restitution to Meridian Mutual in installments. He was to pay $20,000 immediately, another $10,000 within 60 days, and the remaining $10,000 180 days later. He submitted his final payment on February 5, 1996. On that date, the court dismissed the charges against him without prejudice.

## II. PROCEDURAL HISTORY

On July 26, 1996, Michael filed a four-count civil complaint against Maurice in the United States District Court for the Eastern District of Michigan. The complaint alleged breach of contract, unjust enrichment, fraud, and injurious falsehood. Maurice filed a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. Because the parties presented matters outside of the pleadings to support their respective positions, the court treated Maurice's motion as a Rule 56 motion

for summary judgment, and ruled in his favor. The district court disposed of the first three counts of the complaint on grounds they were barred by the applicable statutes of limitations. The court held that Michael's injurious falsehood claim was barred by collateral estoppel. The court reasoned that Michael's participation in the pretrial diversion program operated as a plea or conviction so as to preclude him from pursuing the injurious falsehood claim against his brother. Michael appeals only the district court's dismissal of the injurious falsehood claim.

## III.  DISCUSSION

Because the district court treated the defendant's 12(b) motion to dismiss as a Rule 56 motion for summary judgment, we will apply the standard of review applicable to summary judgment. This court reviews a district court's grant of summary judgment *de novo. See Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 465 n. 10, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Sargi v. Kent City Bd. of Educ.,* 70 F.3d 907, 910 (6th Cir.1995). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The court must draw all inferences in a light most favorable to the non-moving party. *Northland Ins. Co. v. Guardsman Products, Inc.,* 141 F.3d 612, 616 (6th Cir.1998).

In disposing of plaintiff Michael Neshewat's injurious falsehood claim under principles of collateral estoppel, the district court concluded that his participation in the pretrial diversion program operated as an implicit acknowledgment of both the truth of his brother's statements to the police and of his own guilt with regard to the insurance fraud charges. The court reasoned:

Despite Plaintiff's contention that [Defendant's] statements to the police and at his preliminary exam [regarding the location of the Mercedes Benz between July 19 and July 21, 1990] were false, Plaintiff at least implicitly acknowledged their truth by pleading to pretrial diversion for intent to pass false title to a motor vehicle and false pretenses with intent to defraud and agreeing to pay $40,000 restitution to the insurance company. While it is true that, in accordance with the terms of Michigan's Pre–Trial Diversion Program, upon his full payment of the $40,000 restitution and his successful completion of the conditions of supervision while he was on diversion status, the case against Plaintiff was dismissed, the fact remains that Plaintiff's agreement to pay $40,000 acts as an implicit, if not an express, acknowledgment of guilt no less than a plea of *nolo contendere* (no contest) operates. It is well-settled in this Circuit that, under principles of collateral estoppel, a plea of guilty or *nolo contendere /* "no contest", or a conviction, bars a subsequent civil action for damages for malicious prosecution, false arrest, false imprisonment or defamation claim.

Noting that no Michigan state or federal court had yet addressed the issue of whether a pretrial diversion agreement should operate like a plea or conviction to bar subsequent civil actions for damages arising out of the circumstances which gave rise to the criminal charges, the district court relied upon the reasoning in two cases from the Second and Tenth Circuits, *Roesch v. Otarola,* 980 F.2d 850, 853 (2d Cir.1992), and *Swanson v. Fields,* 814 F.Supp. 1007, 1014–16 (D.Kan.1993), *aff'd,* 13 F.3d 407 (10th Cir.1993). Each case held that diversion agreements operate as convictions for purposes of precluding a subsequent civil suit for damages. *See Swanson,* 814 F.Supp. at 1014–16; *Roesch,* 980 F.2d at 853. The district court also noted that *Swanson* and *Roesch* were consistent with the reasoning of the Sixth Circuit in *Walker v. Schaeffer* as to the

preclusive effect of a guilty or no contest plea or conviction on a subsequent civil action for malicious prosecution or false arrest. *See Walker v. Schaeffer*, 854 F.2d 138, 142–43 (6th Cir.1988)(plaintiff who pled guilty to crime was barred by collateral estoppel from pursuing malicious prosecution and false arrest claims because he was afforded "full and fair opportunity" to litigate issues of sufficient evidence of probable cause in the criminal case applying Ohio law).[3] According to the district court's analogy, pretrial diversion should carry the same preclusive effect as *nolo contendere* pleas under *Walker*. The court therefore held that Michael Neshewat had a "full and fair opportunity" to litigate the issue of the truth of Maurice Salem's statements regarding the location of and title to the Mercedes in his criminal case. The court concluded, "That he chose to take advantage of pretrial diversion and forego trial on the criminal charges should not allow him to now bring an action challenging the veracity of the evidence that would have been presented had he gone to trial."

As the district court noted, no Michigan court has yet addressed the preclusive effect of pretrial diversion. Assuming the plaintiff stated a viable claim for injurious falsehood, it would have been incumbent on the district court to determine how Michigan courts would have resolved this issue.[4] *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 85–86, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (construing Ohio preclusion law as applied by Ohio courts). Reviewing the record de novo, however, we do not reach whether Michigan law would sanction collateral estoppel of plaintiff's tort claim due to his participation in pretrial diversion because plaintiff's tort claim itself is deficient.

■ Injurious falsehood was recognized as an actionable claim in Michigan in *Kollenberg v. Ramirez*, 127 Mich.App. 345, 339 N.W.2d 176 (1983). The Michigan Court of Appeals essentially adopted the elements of injurious falsehood as set forth in the Restatement (Second) of Torts. Under the Restatement,

[o]ne who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if

(a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or

---

**3.** The court noted that under *State v. Pernell*, 47 Ohio App.2d 261, 353 N.E.2d 891 (1976), a no contest plea is "an admission of the truth of the facts underlying the criminal charge." *Walker*, 854 F.2d at 143.

**4.** The Supreme Court of Michigan, in *Lichon v. American Universal Insurance Co.*, 435 Mich. 408, 459 N.W.2d 288 (1990), declined to follow *Walker v. Schaeffer, supra*, cautioning that the Sixth Circuit in *Walker* ignored language in the advisory committee note accompanying the 1980 amendment of Federal Rule of Evidence 410, which clarified that the evidentiary rule is applicable regardless of the nature of the proceeding. *Lichon*, 435 Mich. at 424, 459 N.W.2d at 296, n. 13. The Supreme Court of Michigan concluded, "[N]either a plea of *nolo contendere* nor a conviction based thereon prevents the person from maintaining innocence in subsequent civil litigation regardless of whether the person who entered the plea is the plaintiff or the defendant in the subsequent litigation." *Lichon*, 435 Mich. at 431, 459 N.W.2d at 299.

In 1991, however, Michigan Rule of Evidence ("M.R.E.") 410, which had been virtually identical to its federal counterpart, was amended to permit introduction of pleas of *nolo contendere* to support a defense against a claim asserted by the person who entered the plea. The case of *Carpenter v. Consumers Power Co.* relied upon the 1991 amendments to hold that a *nolo contendere* plea by the plaintiffs' employee would be admissible against the plaintiffs to impeach their credibility on the issue of whether they had suffered any damages attributable to the defendant's conduct. *See Carpenter v. Consumers Power Co.*, 230 Mich.App. 547, 555, 584 N.W.2d 375, 380 (1998). The 1991 amendments to M.R.E. 410 and the *Carpenter* decision subvert much of the Michigan court's reasoning in *Lichon* and suggest that the court might decide differently were it presented with the question of the preclusive effect of *nolo contendere* pleas anew.

either recognizes or should recognize that it is likely to do so, and

(b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

Restatement (Second) of Torts, § 623A (1977). In explaining the tort of injurious falsehood, the *Kollenberg* court also drew upon the definition articulated in Prosser & Keeton on Torts (hereinafter "Prosser"). *See Kollenberg,* 127 Mich.App. at 350–51, 339 N.W.2d at 178 (citing Prosser & Keeton on Torts (4th ed.), Injurious Falsehood, § 128, at 915). The court observed that "the gist of the tort is some interference with an economically advantageous relationship which results in pecuniary loss rather than an action that directly affects property." *Id.* Prosser explains that the essence of the tort is "the interference with the prospect of sale or some other advantageous relation." Prosser & Keeton on Torts (5th ed.), Injurious Falsehood, § 128, at 966. Prosser's description of the elements of injurious falsehood make clear that the plaintiff must allege harm to some beneficial relationship:

> Injurious falsehood, or disparagement, then, may consist of the publication of matter derogatory to the plaintiff's title to his property, or its quality, or to his business in general, or even to some element of his personal affairs, of a kind calculated to prevent others from dealing with him, or otherwise to interfere with his relations with others to his disadvantage.

*Id.* at 967. The communication of such an injurious statement to a third party must play a "material and substantial part in inducing others not to deal with the plaintiff, with the result that the plaintiff suffers special damage, in the form of loss of trade or other dealings." *Id.* The plaintiff also carries the burden of proving that the injurious statement is actually false. If the statement is not false, the plaintiff has no claim. *Id.*

In *Kollenberg,* the plaintiff, a licensed pharmacist, sued a physician for damages resulting from the physician's alleged statement to Ronald Semmel, the pharmacist's customer. According to the plaintiff, Mr. Semmel brought a prescription, written by the defendant, to his pharmacy and asked him to fill it. Believing the prescribed dosage was incorrect, the plaintiff telephoned the defendant to inform him of his error and the defendant responded by demanding that the plaintiff fill the prescription anyway as written. After consuming the prescribed dosage of medication, Mr. Semmel suffered a severe reaction resulting in hospitalization. During the hospital stay, the defendant allegedly told Mr. Semmel that his reaction was caused by plaintiff's error in filling the prescription. As a result, Mr. Semmel filed a lawsuit against the plaintiff, which he subsequently voluntarily dismissed. *Kollenberg,* 127 Mich.App. at 348, 339 N.W.2d at 177. In the pharmacist's suit against the physician, the Michigan Court of Appeals found that the plaintiff sufficiently alleged the elements of injurious falsehood:

> Plaintiff alleged that defendant published a false statement to Mr. Semmel knowing that statement to be false. Plaintiff also alleged that the defendant knew, or should have known, that this false publication would likely result in an action brought against plaintiff which would cause plaintiff pecuniary loss. Furthermore, plaintiff alleged that his special damages, or pecuniary losses, were the costs associated with defending Mr. Semmel's lawsuit and other economic consequences flowing from that lawsuit.

*Kollenberg,* 127 Mich.App. at 352, 339 N.W.2d at 179 (citations omitted). The court was also presented with the question of whether an action for injurious falsehood arising from a statement that was also defamatory in nature was subject to Michigan's one-year statute of limitations for a defamation action. *Kollenberg,* 127 Mich.App. at 353, 339 N.W.2d at 179. The court concluded that instead of the one-

year limitation period for defamation actions, the three-year limitation period for damages to person or property under Mich. Comp. Laws § 600.5805(8) should apply to injurious falsehood claims. *Kollenberg,* 127 Mich.App. at 354–55, 339 N.W.2d at 180. Under the facts of *Kollenberg,* any potential recovery of general personal damages under the plaintiff's defamation claim was barred by the running of the one-year statute of limitations for defamation. *Kollenberg,* 127 Mich.App. at 349, 339 N.W.2d at 177. His claim for special damages consisting of the cost of defending himself against Mr. Semmel's lawsuit, however, could go forward as a claim for injurious falsehood and was not time-barred. *Kollenberg,* 127 Mich.App. at 354–55, 339 N.W.2d at 180.

We now turn to whether, like the plaintiff in *Kollenberg,* Michael Neshewat sufficiently alleges the elements of injurious falsehood as recognized in Michigan. The plaintiff must allege: (1) that the defendant published a false statement to a third party knowing that statement to be false (or acting in reckless disregard for its truth or falsity); (2) that the defendant knew, or should have known, that this false publication would likely result in pecuniary loss or in harm to interests of the plaintiff having a pecuniary value; and (3) that the plaintiff suffered special damages as a result. *See Kollenberg,* 127 Mich.App. at 352, 339 N.W.2d at 179; Restatement (Second) of Torts, § 623A (1977). The first and third of these elements appear to be satisfied. The plaintiff in the instant case has alleged that the defendant published a false statement to a third party knowing that statement to be false. Count IV of Michael Neshewat's complaint, captioned "Injurious Falsehood," asserts that Maurice Salem made false statements to the police department in Michigan claiming that the vehicle at all times was in his possession in New York.[5] The complaint also asserts that "Defendant knew or should have known that the statements made to the ... police would result in criminal prosecution of Plaintiff." Furthermore, the plaintiff pleads special damages. Count IV of plaintiff's complaint unambiguously states, "The Plaintiff was charged with committing a crime against the insurance company and was forced to expend in excess of $40,000.00 in defending himself."

The second element of injurious falsehood, however, i.e., that the defendant knew, or should have known, that this false publication would likely result in pecuniary loss or in harm to interests of the plaintiff having a pecuniary value, is not satisfied. Plaintiff does not allege that the defendant intended his statements to the police to result in "harm to interests having pecuniary value," Restatement (Second) Torts 2d § 623A at 334, nor does he allege that the defendant in any way "depriv[ed] the plaintiff of beneficial relations with others." Prosser (5th ed.) § 128 at 967. Rather, Count IV of plaintiff's complaint states that the defendant knew or should have known his statements to the police would "result in criminal prosecution." Michael Neshewat's claim is distinguishable from the pharmacist's claim in *Kollenberg* in that Michael does not allege that his brother harmed some beneficial relationship (such as the pharmacist's relationship with Mr. Semmel). Had Michael complained instead that his brother adversely affected some beneficial relationship with Meridian Mutual, he might come closer to a viable injurious falsehood claim.

---

5. Count IV of plaintiff's complaint also alleges that the defendant falsely informed Meridian Mutual he had been in continuous possession of the vehicle. As a threshold matter, the district court dismissed plaintiff's claims with respect to any statements to the insurer because plaintiff produced no evidence to contradict defendant's affidavit testimony that no such statements were ever made. Having carefully reviewed the record evidence, we are not persuaded that the district court erred. Accordingly, our analysis focuses upon the defendant's alleged statements to the police and at the preliminary examination.

 

In any event, Michael has no legal recourse against his brother for statements made in the preliminary examination. Michigan adheres to the Restatement principle that statements made by witnesses in judicial proceedings are absolutely privileged. *Pagoto v. Hancock*, 41 Mich.App. 622, 623, 200 N.W.2d 777, 778 (1972)(citing 3 Restatement of Torts § 588, p. 244). Section 588 of the Restatement states in its entirety, "A witness in judicial proceedings is privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding." Restatement (Second) of Torts § 588 (1977). The rules on absolute privilege, which include immunity for communications by witnesses in or preliminary to judicial proceedings, apply to the publication of an injurious falsehood. Restatement (Second) of Torts § 635 (1977); *see General Electric Co. v. Sargent & Lundy*, 916 F.2d 1119, 1125 (6th Cir.1990). Maurice's testimony that he never gave Michael permission to retitle the Mercedes in his own name in Michigan, and that Michael did not have the car in Michigan between July 10 and July 21, 1990, unquestionably has some relation to whether Michael intentionally passed false title or defrauded Meridian Mutual by submitting a false theft claim for the vehicle. As a result, his testimony at the preliminary exam is absolutely privileged and cannot serve as the basis for an injurious falsehood claim.

## IV. CONCLUSION

Having carefully considered the record on appeal, the briefs of the parties, and the applicable law, we **AFFIRM** dismissal of plaintiff's injurious falsehood claim as plaintiff fails to allege the elements of injurious falsehood under Michigan law and absolute privilege bars any claim based upon statements made by the defendant as a witness during the preliminary examination.